# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

JONATHAN LEFMAN,

Defendant.

Criminal No. 25-cr-10083-JEK

## DEFENDANT'S MOTION TO COMPEL DISCOVERY

Defendant, Jonathan Lefman, requests an order compelling the government to produce

discovery requested by letter dated July, 2 2025.  *See* **Exhibit 1.**  In its response, attached as

**Exhibit 2**, the government declined to provide much of the requested information.

The requested discovery, discussed below, is made pursuant to Fed. R. Crim. P. 16, Local

Rule 16.2, the due process clause of the Fifth Amendment, *Brady v. Maryland,* 373 U.S. 83

(1963), and the inherent power of the Court to order broad discovery in appropriate cases. *See*

Rule 16, Advisory Committee Notes (recognizing that "[t]he rule is intended to prescribe the

minimum amount of discovery to which the parties are entitled...[and] is not intended to limit the

judge's discretion to order broader discovery in appropriate cases").

### Discovery Status

In response to the defendant's July 2, 2025, discovery request, the government has

produced[1] (1) redacted law enforcement reports (2) redacted written statement from the

Complainant and (3) redacted audio and body worn camera footage. After reviewing the

---

[1] *See* the Government's response to the defendant's discovery requests attached hereto as **Exhibit 3**

1

government's most recent production, the defendant requested unredacted versions of the same as well as certain training and procedure materials, and any promises, inducements or rewards it may have offered to the Complainant. The government declined. The defendant now exercises his right to request the following by motion:

(1) unredacted copies of law enforcement reports previously produced;

(2) unredacted audio recording and body worn camera footage previously produced;

(3) Promises, inducements, rewards[2] to any witnesses by any law enforcement agency in connection with this case;[3] and

(4) FBI and law enforcement reports relating to the requirements and procedures of interviewing minor, non-native English-speaking witnesses, and the general procedures and instructions on conducting victim and witness interviews.

### Background[4]

Mr. Jonathan Lefman is charged with one count of Abusive Sexual Contact within the Special Aircraft Jurisdiction of the United States, 49 U.S.C. § 46506(1) and 18 U.S.C. § 2244(b), which are based on his alleged acts of intentional and inappropriate touching of a minor both during the flight and at the point of deplaning.

As context, on August 30, 2024, Mr. Lefman and the Complainant were both passengers onboard a JetBlue flight flying from San Juan, Puerto Rico to Boston, Massachusetts. During the flight, Mr. Lefman was seated with his family, with whom he had recently enjoyed vacation. The Complainant, 17, was also returning from some sort of family event with two adult women who

---

[2] Benefits provided to witnesses includes Stays of deportations or other immigration status considerations, S-Visas etc.

[3] Such information is exculpatory and required under Local Rule 116.2(b)(1)(C).

[4] The following summary of the allegations is derived from law enforcement reports and other discovery materials and is not an admission of their truth, reliability, or admissibility.

have thus far held themselves out to be some form of family members. (As discussed below, their exact relationship to the Complainant is unknown, but according to their representations in the body worn camera footage, they inconsistently, and at various point, claim to be the "cousins", "aunts" or hold some kind of other familial tie to the Complainant.[5]

As to the reason for their travel, body worn camera evidence suggest that these two alleged family members had arranged for the Complainant "to travel to the states" for the first time. Given that statement, it is unclear whether the Complainant is a citizen or holder of some form of temporary or permanent status.

Proximate in time to deplaning, the Complainant captured a video of what appears to be Mr. Lefman's hand reaching near the lower pocket area of the back of her seat, which from Mr. Lefman's purview -- is his front pocket seat. Before taking this video, the Complainant offers different accounts of what she felt and saw leading up to the video.  Notably, the video does not show the hand touching the Complainant in any way.

After deplaning, the Complainant discussed her recorded video with the two unidentified female family members. To be clear, during the entirety of the flight, these two women were not seated with or within an eye view of the Complainant. And when speaking to law enforcement, they offer a varying (second hand) account of Mr. Lefman's actions leading up to the recording of his hand reaching under the seat.  Since the evidence so far seem to suggest that the Complainant shared the video (and her version of events) with both women, at the same time, they are both potential witnesses.

---

[5]  Transcripts of the (1) Complainant's FBI audio recorded interview on 9/9/2024 and (2) Complainant's and two unidentified women's statements recorded by body worn camera footage on 8/30/3034 are both available should the Court wish to review them.

3

Specifically, the overarching issue here, and the reason for the defendant's request, is to understand the full extent of inconsistent statements, confirm suspicion of motive and investigate credibility issues; all of which have been revealed by the government's first round of discovery. Initial discovery productions also revealed certain investigation defects that have bearing on the Complainant's statements and credibility as a whole.

At the outset of this case, the government filed a routine protective order on account of the Complainant's age. The defendant did not object at that juncture but now requests this Court to revisit the issue and terminate that Order. The defendant's renewed request is specifically linked to the change of circumstances in this case— including suspicions of witness motive, issues of credibility, and general potential defenses.

## Argument

### A. <u>Overview</u>

This case is built on sand:

Statement evidence is the crux of the government's case. Its case is predicated on he said/she said, and the central conflict involves a dispute concerning an alleged touch during a busy flight.  Although the government leans on video evidence of Mr. Lefman's hand, which is shown maneuvering towards the bottom of the front pocket area of the seat facing him, the video itself is not dispositive. Rather, it shows that Mr. Lefman's hand makes no contact with the Complainant's buttocks or other intimate body parts, nor does it offer evidence of his intention to "gratify".  *See*  18 U.S.C. 2244; also see, *United States v. Castillo*, 981 F.3d 94, 104 (1st Cir. 2020) (defining "sexual contact" as "the intentional touching, either directly or through the clothing, of the ... inner thigh ... of any person with an intent to ... arouse or gratify the sexual desire of any person").

4

Moreover, the video was taken after landing and at or around the time passengers were invited to "check the seatback pocket in front of you."

As the video itself has no touch, spoken words, or other acts relating to intent, the central evidence in the government's case includes statements from the Complainant and a secondary account from the two unidentified women. The government will use Complainant's testimony to allege that Mr. Lefman at some point touched the Complainant in a manner that constitutes the crime charged.

As stated above, the overarching issue here is credibility and exploring the inconsistent statements (including those made under the guidance of law enforcement), is crucial to the preparation of a defense. It is the government's denial of the above requests that necessitates the defendant's move by motion to compel discovery.

### B. Unredacted copies of law enforcement reports, body worn camera and audio recordings are material to the government's case-in-chief, within the government's custody and control and necessary to adequately investigate the charges

The government has a constitutional "duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo,* 629 F.3d 264, 266 (1st Cir. 2011) (citing *Brady v. Maryland,* 373 U.S. 83 (1963)). In a case involving witness statements, the Court may compel pretrial disclosure of exculpatory Jencks materials prior to the conclusion of a witness' direct testimony, when the defendant's ability to adequately investigate the charges is substantially hindered, which includes independently gathering evidence and interviewing witnesses. *United States v. Carmona-Bernacet*, 539 F. Supp. 3d 253, 257 (D.P.R. 2021).

The requested discovery is exculpatory, as that term is defined both by the Supreme Court and in the Local Rules, and thus the government is obligated to provide it to the defendant.

*See Brady v. Maryland*, 373 U.S. 83 (1963) (due process requires disclosure of evidence upon request where the evidence "is material either to guilt or to punishment"); *Giglio v. United States*, 405 U.S. 150 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the general rule"); Local Rule 116.2 (a) (defining exculpatory evidence as "information that is material and favorable to the accused," including information that tends to "cast doubt on defendant's guilt as to any essential element in any count in the indictment or information," or "cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief". ).

     a. <u>Production of Unredacted body worn camera is necessary to investigate the charges including discovery of statement inconsistencies, inaccuracies and improbabilities.</u>

In this case, the primary evidence will be testimonial—what the Complainant alleges Mr. Lefman did before and after the video was taken, and which versions of these allegations were relayed to various potential witness(s). All of the statements are within the custody and control of the government and may be proffered to infer Mr. Lefman's intent. As stated above, although the government produced a video that the Complainant took, after landing, of Mr. Lefman's hand reaching towards the bottom of the front pocket area of the seat in front of him, the video itself is not dispositive evidence. *See Castillo*, 981 F.3d 94, 104 (1st Cir. 2020). Indeed, it shows no contact with the complainant at all. Since the video shows no contact with the Complainant's private area or buttock, nor does it prove an attempt to arouse or to gratify, the statements from the Complainant and what she relayed to other witness will be used to fill the gaps.

The issue here is the government has refused to produce unredacted versions of the body camera video, audio recording of the Complainant's follow-up interview, and law enforcement reports. In respect to the statements in the body worn camera footage, various sections of the statements made by all the named potential witnesses are redacted. The defendant's ability to

6

investigate the full range of potential inconsistencies and inaccuracies of witness statements is hindered and impeded.

In addition to the Local Rules described above, the  criminal discovery rules provide that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and the item is (i) material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E);  see Local Rule 116.1(c)(1)(A) (requiring production of Rule 16 material within 28 days of arraignment).  As the Court is aware, materiality is a low threshold: "[i]nformation is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path." See *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013); see also *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) ("Even if the documents caused [the defendant] to completely abandon [an] entrapment defense and take an entirely different path, the documents would still have been 'material to preparing the defense' under Rule 16(a)(1)(E)(i)"). The First Circuit has observed that:

> Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process.

*United States v. Lanoue*, 71 F.3d 966, 976 (1st Cir. 1995), *abrogated on other grounds by United States v. Watts*, 519 U.S. 148 (1997). Finally*, inculpatory* information is equally subject to disclosure because "it is just as important to the preparation of a defense to know its potential

pitfalls as it is to know its strengths." *United States v. Marshall,* 132 F.3d 63, 67 (D.C. Cir. 1998); see also *United States v. Facteau*, No 15-cr-10076-ADB, 2015 WL 6509120, 2015 U.S. Dist. LEXIS 146210 at *2 (D. Mass. Oct. 28, 2015), objections overruled, 2016 WL 4445741 (D. Mass. Aug 22, 2016) (quoting *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005)).

As stated above, the video taken of Mr. Lefman's hand does not prove the offense on its own—there is no touch of an enumerated body part, nor does it demonstrate any intent to arouse or to gratify. *Castillo*, 981 F.3d 94, 104 (1st Cir. 2020) (defining "sexual contact" as "the intentional touching, either directly or through the clothing, of the ... inner thigh ... of any person with an intent to ... arouse or gratify the sexual desire of any person").

Rather, the government seeks to prove Mr. Lefman's intent by offering "statements". Here those statements involve versions of what the Complainant believed she felt and saw before taking the video of Mr. Lefman's hand. However, it appears that the Complainant offered inconsistent statements to law enforcement and to the two unidentified women.

These inconsistencies were gleaned from what was unredacted in reports, video and audio evidence. However, the defendant has the right to both better understand the inconsistencies and explore other inconsistencies that may have been learned but from the redacted productions. For instance, the audio of the body camera video cuts out at various points of communication between the Complainant and law enforcement; and also, between the two unidentified women and law enforcement. Both sets of communications are necessary to determine the extent of the inconsistent statements and to gather any further impressions related to witness credibility and potential motive to fabricate or lie.

**b.** Productions of the identities of the declarants are central to the defendant's ability to investigate suspicions of motive, bias and questions of credibility

8

Just as the statements in this case are themselves material, the credibility and potential motivations of the declarants who made these statements are material to the defendant's preparation of a defense. The redactions of the identities of the very declarants who made these statements further frustrates the defendant's efforts to prepare his defense and to adequately confront his accusers.

Government disclosure of exculpatory and impeachment evidence is part of the constitutional guarantee to a fair trial. *Brady*, 373 U.S. at 87; *Giglio,* 405 U.S. at 154. The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Due process requires the disclosure of exculpatory and impeachment evidence be made in sufficient time to permit the defendant to make effective use of that information at trial. *See e.g.*, *Weathersford v. Bursey*, 429 U.S. 545, 559 (1997); *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). The dictates of *Brady* and *Giglio* override the requirements of the Jencks Act. *See, e.g., United States v. Starusko*, 729 F.2d 256, 263 (3d Cir. 1984) (holding "compliance with the statutory requirements of the Jencks Act does not necessarily satisfy the due process concerns of *Brady*").

Courts appear to follow a general rule that the production of *Brady* material must occur at a time when disclosure would be of value to the accused. *See, e.g.*, *United States v. Elmore*, 423 F.2d 775, 779 (4th Cit. 1970); *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985). As noted above, many courts have required pretrial disclosure of exculpatory material to aid in the preparation of the defendant's case. *See e.g. United States v. LeVasseur*, 826 F.2d 158, 159 (1st Cir. 1987) (per curiam) (finding no abuse of discretion to order pretrial disclosure of rewards, inducements, or promises made to government witnesses); *United States v. Shvarts*, 90 F. Supp. 2d 219, 229 (E.D.N.Y. 2000) ("the constitutional obligations [of *Brady*] must prevail over the

9

Jencks Act when the two collide"); United *States v. Snell*, 899 F. Supp 17, 21 (D. Mass 1995) (finding it "inconceivable that a statutory obligation should supersede a constitutional one")

In this case, a review of the body worn evidence, audio interview and reports reveal more than inconsistent versions of events. In fact, the enumerated list below outlines the existence of evidence that may be used to discredit witness testimony by attacking credibility:

1. Credibility – inconsistent statements. The Complainant offers various versions of what she believes she felt and saw Mr. Lefman do before recording the video of his hand. (which standing alone, is insuffient.)

2. Credibility – dishonesty. During the audio recording, the Complainant represents to law enforcement that her handwritten statement was independently written without the involvement of the two unidentified women.  However, the evidence itself reveals English is not her primary language and she struggled to speak the language during both of her interviews with law enforcement.

3. Credibility through dishonesty.  The two unidentified women seem to misrepresent their familial status to law enforcement.  When asked their relation to the Complainant their responses were "aunt" "cousin" and "we're Cape Verdeans. We're all related "like cousins, aunts".  It also seems as though one of the women says that she lives with the Complaintaint's father.

4. Potential Bias.  One of the women states that she works at the airport in which this alleged incident took place, and that she has some sort of work-based relationship with one of the responding officers.

5. Potential Motivation to Fabricate.  The body worn camera evidence also reveals details that empower the defendants right to investigate the credibility and potential

10

motivations of the Complainant and the two unidentified women including: their

mentioned connection to law enforcement;  alluding to knowing the system; reference

to  working in that same airport and having an ongoing work relationship with one of

the responding officers;  reference to living with the Complainant's father rather than

owning or renting their own property;  the appearance of expensive designer bags (to

which it seems all three witnesses possess);  their general inconsistent statements;

and the two unidentified women's overall exertion of themselves in the case.

Finally, the Complainant's immigration status is also of concern, as any inducements and

promises could have bearing on her motivation to fabricate. Particularly, if benefits such as Stays

of deportations or other immigration status considerations, S-Visas, promises rewards or

inducements are offered. Counsel for the defendant have on various occasions inquired about this

point from the government have yet to receive a clear response. This point becomes even more

relevant when balanced against the statements by the two unidentified women who state this trip

was the Complainant's "first to the states" and that the Complainant was from "Cape Verde. She

just -- this is her first year living there".

Taken together, these factors offer justification for the Court to grant the defendant's

request for a fair and timely opportunity to adequately investigate the identities and backgrounds

of the declarant's whose statements are the crux of the government's case and chief.

For all the reasons discussed above, these statements and recordings are material to the

preparation of a defense and will play an important role in uncovering admissible evidence,

aiding witness preparation, corroborating testimony, and/or assisting impeachment or rebuttal.

Given the nature of the statements and the unique set of facts in this case, such evidence falls

outside of the usual 21-day- before- trial production because building a defense and preparing a

11

federal trial in a 3-week period would be impractical, prejudicial and ineffective. Likewise, waiting to advise the Defendant on the evidence and his potential exposure and options would be equally problematic.

**C. Mr. Lefman's right to due process and a fair trial outweighs the government's right to redact information that is central to his preparation of a defense.**

This Court possesses "wide latitude in the management of discovery," including the issuance, modification and termination of protective orders. *United States v. Diaz-Colon*, 668 F. Supp. 3d 111, 114–15 (D.P.R. 2023), quoting *Danny B. v. Raimondo*, 784 F.3d 825, 834 (1st Cir. 2015). Federal Rule of Criminal Procedure 16(d)(1) ("Rule 16(d)(1)") provides that "[at] any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. Crim. P. 16(d)(1). *Id.*  Here, at the outset of this case, the government filed a routine protective order due to the complainant's age. That same protective order was extended to the other named parties within the reports, including the two alleged family members who are the recipients of inconsistent accounts, by the compliant.

The defendant requests a fair opportunity to investigate the information requested within this motion as it is necessary for his preparation for trial.   This Court is empowered to terminate or modify a protective order upon showing of good cause. See, *United States v. Bulger*, 283 F.R.D. 46, 54–55 (D. Mass. 2012). (Modifying or lifting an existing protective order implies a changed circumstance or a new situation warranting such relief.) Much has changed since this Court endorsed the government's Protective Order, (including the Complainant's status as a minor, and the defendant now seeks to continue to learn and investigate some of the new details produced in discovery which are material to his case.

12

**D. Any instructions, manuals, circulars, field notes, correspondence, or other guidance, whether internally from the FBI or from the Department of Justice, about when and how to conduct interviews of minor and non-native English speakers, including, requirements for parental consent and presence during questioning of a minor, requirements of requesting an interpreter and ordering transcriptions and how to conduct a witness investigation and determine probable cause to arrest. Please include any directions or instructions given to agents, any law enforcement present during the investigation as well as supervisory personnel at FBI.**

Discovery of the criteria for Federal Agent witness interviews of a minor (especially one with significant linguistic challenges) is necessary and relevant to the defenses of biased, ill-motivated and unreliable testimony, selective enforcement, and potential government misconduct. All of which are favorable to the defendant's defense and "material either to guilt or punishment." *Brady*, 373 U.S.83 at. 87 (1963). In this case the materials requested directly relate to the law enforcement questioning that was conducted on 8/30/24 and 9/30/24.

During the questioning of the Complainant, Federal Agents conducted a slanted and *spoon-fed* interview of a non-native English-speaking minor without the presence of either her parent or an interpreter.  Aside from the apparent lack of written or other formal procedures of parental consent, the language barrier here should have heightened law enforcement's need to assure accuracy.  That need is further heightened here, where the video evidence, on its own, lacks evidence of a crime and the only "corroborating evidence" includes secondary testimony that is offered from the perspective of the same minor witness.

It is beyond dispute that law enforcement should have been aware of the significance of the need for accuracy. After all, in this case, the Complainant's statements would be the central evidence to officiate formal charges.  Rather than ensuring accuracy, the audio recording reveals an interview stratagem that ensured a version of events that met each element of the offense charged.  Given the circumstances within this case, this Court is beyond justified to enter an Order to release the materials requested above, as they collectively aid the defendant in his pursuit

13

to discredit both the statements expected to be used against him at trial and the methods to obtain

those statements.

### **RELIEF SOUGHT**

For the reasons set forth above, defendant requests that the Court Order the Government

to produce the following:

(1) unredacted copies of law enforcement reports previously produced;

(2) unredacted copies of audio recording and body worn camera footage

previously produced;

(3) copies of any promises, inducements, rewards to any witnesses by any law

enforcement agency in connection with this case; and

(4) copies of FBI and law enforcement reports relating to the requirements and

procedures of interviewing minor, non-native English-speaking witnesses, and the

general procedures and instructions on conducting victim and witness interviews.

Respectfully submitted,

JONATHAN LEFMAN

By his attorney,

*/s/* Shayla Mombeleur

Paul Cirel (BBO# 084320)
Shayla Mombeleur (BBO# 698707)
Todd & Weld LLP
One Federal Street
Boston, MA  02110
pcirel@toddweld.com
smombeleur@toddweld.com
617.720.2626

Dated: October 29, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Shayla Mombeleur, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 29, 2025.

*/s/ Shayla Mombeleur* _____

Shayla Mombeleur

Date: October 29, 2025

# <u>EXHIBIT 1</u>

**Todd&Weld** LLP

Shayla Mombeleur
E-mail: smombeleur@toddweld.com

July 2, 2025

**VIA EMAIL**

Assistant U.S. Attorney Elianna J. Nuzum
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210

> **RE:** **United States v. Johnathan Lefman**
> **No. 25-CR-10083-JEK**

Dear Ms. Nuzum:

Thank you for meeting with us to discuss the requests set forth in our initial discovery letter. As discussed at our meeting, all of the items requested below are necessary for the defense to adequately prepare for trial and advise our client of the evidence against him. To meet those aims, we request, or re-request, the production of the following:

1. Unredacted copies of the reports produced
2. Any and all copies of written statements from the complainant and other witnesses referenced within the investigative reports, including all variations of those statements. For statements made orally, please produce in writing
3. All communication between the complainant and Sargeant Lopes on 8/30/24. According to the FBI 9/13/24 report, this particular communication exchange included some form of telecommunication (See, USAO_000105); and
4. All audio recording and video taken during the 8/30/24 interview. Including, statements made by the complainant, her father (who according to the report offered consent for the interview to proceed with his minor daughter) and the "aunt/cousin" who is referenced in this report. *Id.* The same for any other existing audio and video recordings.

The discovery requests discussed above are made pursuant to Fed. R. Crim. P. 16, Local Rule 16.2, the due process clause of the Fifth Amendment, *Brady v. Maryland*, 373 U.S. 83 (1963), and the inherent power of the Court to order broad discovery in appropriate cases. See Rule 16, Advisory Committee Notes (recognizing that "[t]he rule is intended to prescribe the minimum amount of discovery to which the parties are entitled...[and] is not intended to limit the judge's discretion to order broader discovery in appropriate cases").

As you know, the government has a constitutional "duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v.*



*Prochilo,* 629 F.3d 264, 266 (1st Cir. 2011) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). In a case involving witness statements, the Court may compel pretrial disclosure of exculpatory Jencks materials prior to the conclusion of a witness' direct testimony, when the Defendant's ability to adequately investigate the charges is substantially hindered, which includes independently gathering evidence and interviewing witnesses. *United States v. Carmona-Bernacet*, 539 F. Supp. 3d 253, 257 (D.P.R. 2021). The Local Rules further provide that

> [e]xculpatory information includes, but may not be limited to, all information that is material and favorable to the accused because it tends to:
> (1) Cast doubt on defendant's guilt as to any essential element in any count of the indictment or information;
> (2) Cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief, that might be subject to a motion to suppress or exclude . . . .;
> (3) Cast doubt on the credibility or accuracy of any evidence that the government anticipates offering in its case-in-chief; or
> (4) Diminish the degree of the defendant's culpability or the defendant's Offense Level under the United States Sentencing Guidelines.

Local Rule 116.2(a) (emphasis added). More specifically, within 28 days of arraignment the government is required to produce:

> (A) information that would tend directly to negate the defendant's guilt concerning any count in the indictment or information;
> (B) information that would cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief and that could be subject to a motion to suppress or exclude . . .;
> (C) a statement whether any promise, reward, or inducement has been given to any witness whom the government anticipates calling in its case-in-chief, identifying by name each such witness and each promise, reward, or inducement, and a copy of any promise, reward, or inducement reduced to writing;
> (D) a copy of any criminal record of any witness whom the government anticipates calling in its case-in-chief, identifying by name each such witness;
> (E) a written description of any criminal cases pending against any witness whom the government anticipates calling in its case-in-chief, identifying by name each such witness.

Local Rule 116.2(b)(1).

As discussed in greater detail below, the discovery we seek not only pertains to information the government is sure to include in its case-in-chief—statement evidence, which is the only evidence, will be used to prove Mr. Lefman's intent. Therefore, the discovery of inconsistencies, inaccuracies, and improbabilities are significant to learn and address both prior to trial and before



entering the trial session altogether. Here, the evidence we seek cannot be discovered by other means as the evidence is solely within the custody and control of the government.

Additionally, the criminal discovery rules provide that [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and the item is (i) material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E) (emphasis added); see Local Rule 116.1(c)(1)(A) (requiring production of Rule 16 material within 28 days of arraignment).  As you are aware, Materiality is a low threshold: "[i]nformation is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path." See *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013); see also *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) ("Even if the documents caused [the defendant] to completely abandon [an] entrapment defense and take an entirely different path, the documents would still have been 'material to preparing the defense' under Rule 16(a)(1)(E)(i)"). The First Circuit has observed that

> Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process.

*United States v. Lanoue*, 71 F.3d 966, 976 (1st Cir. 1995), *abrogated on other grounds by United States v. Watts*, 519 U.S. 148 (1997). Finally, *inculpatory* information is equally subject to disclosure because "it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths." *United States v. Marshall,* 132 F.3d 63, 67 (D.C. Cir. 1998); see also *United States v. Facteau*, No 15-cr-10076-ADB, 2015 WL 6509120, 2015 U.S. Dist. LEXIS 146210 at *2 (D. Mass. Oct. 28, 2015), objections overruled, 2016 WL 4445741 (D. Mass. Aug 22, 2016) (quoting *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005)).

Here, the primary evidence includes what the Complainant states Mr. Lefman did before and after the video was taken. All of which is in the custody and care of the government and will be proffered to infer his intent. Currently, you have produced written versions of the Complainant's statements, which are memorialized through various law enforcement reports, and at least one written report by the Complainant which according to the reports, was at one point amended due to the Complainant's struggle to speak and write in the English language. The language barrier here only heightens the need for the opportunity to review the best and most accurate representation of the

Case 1:25-cr-10083-JEK   Document 69-1   Filed 11/04/25   Page 21 of 63



AUSA Elianna J. Nuzum
July 2, 2025
Page 4 of 5

evidence in this case--the recording themselves. Even more so, where the video does not on its own prove a crime, and the authors of the reports of the Complainant's statements offer an inconsistent primary language with ancestral background. For instance, some reports state the Complainant is of Cape Verdean decent, which is an island off the coast of Africa, yet asset her primary language is referenced as Spanish. Such a mix up could cause an inadvertent disruption in the evidence, which only presents more obstacles and challenges later.  Even more so if the Complainant's statements were misinterpreted by one of the many officers who interviewed her and memorialized her statements. Even if Spanish is a language, she (and the other family witnesses') speaks, the accuracy of translation still holds significance if (like English) this is not her primary language.

Besides the question of proficiency in any language, an immediate disclosure of statement evidence is crucial at this stage of Mr. Lefman's prosecution. Precisely to ensure accuracy and a complete understanding of the evidence.  The video recordings capture the Complainant's firsthand statements to law enforcement and must be viewed against any other versions which may have been written or recorded. Without such evidence, Mr. Lefman is left in the dark about the evidence. He cannot investigate the material evidence against him, prepare a defense or make an informed decision about whether to resolve or litigate the charges. He of course needs to understand what, if any, evidence is stacked against him.

To that same end, the captured statements offered by the fresh complainant are also paramount to the understanding of the evidence and preparing a defense. There is no doubt that first complaint evidence will be used to support which ever version of the Complainant's statements is adopted as Case-in Chief evidence against Mr. Lefman.

Additionally, Mr. Lefman is entitled to obtain these statements for impeachment. *United States v. Carmona-Bernacet*, 539 F. Supp. 3d 253, 258 (D.P.R. 2021), citing *Palermo v. United States*, 360 U.S. 343, 345, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), and (again) the production of these statements are thereto required where the evidence is material to preparing the case, advising on the evidence and the potential outcomes of the case.

For all the reasons discussed above, these statements and recordings are material to the preparation of a defense and will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, and/or assisting impeachment or rebuttal. Given the nature of the statements and the unique set of facts in this case, such evidence falls outside of the usual 21-day- before- trial production because building a defense and preparing a federal trial in a 3-week period would be impractical and ineffective. Likewise, waiting to advise the Defendant on the evidence and his potential exposure and options would be equally problematic.

Todd & Weld LLP • Attorneys at Law • One Federal Street, Boston, MA 02110 • T: 617.720.2626 • F: 617.227.5777 • www.toddweld.com



Sincerely,

Paul Cirel
Shayla Mombeleur

PRC/sm

# EXHIBIT 2



**U.S. Department of Justice**

***Leah B. Foley***
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston. Massachusetts 02210*

August 5, 2025

**By Hand**

Paul Cirel, Esq.
Shayla Mombeleur, Esq.
Todd & Weld LLP
One Federal Street
Boston, MA  02110

> Re:   United States v. Jonathan Lefman,
>       Criminal No. 25-cr-10083-JEK

Dear Counsel:

In fulfillment of the government's ongoing discovering obligations, and following up on my letter of July 17, enclosed please find:

| | |
|---|---|
| USAO 000145 | Redacted copy of the audio recording of the September 9, 2024 interview of the victim |
| USAO 000146-176 | DNA Search Warrant package |
| USAO 000177 | 302 re: Execution of DNA Search Warrant |
| USAO 000178 | Report re: Mailing Lefman DNA to FBI Laboratory |

Please let me know when you would like to come by my office to inspect the redacted version of the audio/video recording of the brief interview of the victim conducted by Sergeant Lopes on August 30, 2024 and the redacted version of the audio/video recording of relevant statements by the victim and her family members at the airport on August 30, 2024.  For your planning purposes, the combined audio/video recording of those statements and the interview is approximately 30 minutes long.  I am generally around the week of August 11 or 18.  Alternatively, I would be willing to produce a copy pursuant to a Protective Order that prohibits Mr. Lefman from possessing a copy.

Very truly yours,

ELIANNA J. NUZUM
Assistant U.S. Attorney

# EXHIBIT 3



**U.S. Department of Justice**

**_Leah B. Foley_**
_United States Attorney_
_District of Massachusetts_

---

_Main Reception: (617) 748-3100_ | _John Joseph Moakley United States Courthouse_
_1 Courthouse Way_
_Suite 9200_
_Boston, Massachusetts 02210_

May 28, 2025

Paul Cirel, Esq.
Todd & Weld LLP
One Federal Street
Boston, MA  02110

>       Re:     United States v. Jonathan Lefman,
>               Criminal No. 25-cr-10083-JEK

Dear Counsel:

I am in receipt of your letter dated May 12, 2025, and appreciate your agreement to extend the time for the government's response under Local Rule 116.3(a) until today.  The government's responses are as follows:

**Request No. 1**
All search warrants obtained in this case.

**Response to Request No. 1**
No search warrants have been obtained in this case.

**Request No. 2**
Unredacted copies of reports and statements.

**Response to Request No. 2**
Reports of witness interviews and witness statements are not yet required to be produced in discovery.  The government has produced some reports early to the extent the reports contain arguably exculpatory information, statements of the defendant, or other information that may be discoverable at this point in time; it has also voluntarily produced some reports early so that the defendant can better understand the case against him and assess whether he wishes to resolve the case short of trial.  The government has redacted some of these reports to remove non-discoverable or sensitive information and personally-identifiable information of potential witnesses and the victim in this case.  The government declines to produce unredacted reports at this time, though I am happy to discuss individual reports and categories of redacted information

with you, and potentially produce reports with fewer redactions subject to a protective order.

**Request No. 3**
All Massachusetts State Police, Boston Police and FBI investigative materials as related to the present case.

**Response to Request No. 3**
This request is overly broad, encompassing non-discoverable materials, and the government declines to make such a broad production. The government has already produced all Massachusetts State Police, Boston Police, and FBI materials that it is aware of that are due pursuant to Federal Rule of Criminal Procedure 16 or Local Rules 116.1 or 116.2. Please let me know if you believe any specific materials are missing.

**Request No. 4**
Names, addresses, and dates of birth for the complainant and any witness referenced within the Boston Police, Massachusetts State Police and FBI investigative reports.

**Response to Request No. 4**
This request is premature, and the government declines to produce this information at this time. The government is not required to identify its witnesses or provide their contact information until its witness list is due, typically two weeks prior to trial. Indeed, with the exception of Minor A, the government has not yet identified which witnesses it will call at trial.

**Request No. 5**
Any and all copies of written statements from the complainant and other witnesses referenced within the investigative reports, including all variations of those statements. For statements made orally, please produce in writing.

**Response to Request No. 5**
As pertains to Minor A's statements, the government produced with Automatic Discovery:
- a written statement of Minor A, USAO_000104;
- a report of MSP's interview of Minor A, which was also captured on body-worn camera, USAO_000134;
- a report of FBI's supplemental interview of Minor A, USAO_000105;
- reports of interviews of three family members to whom Minor A reported the incident, USAO_000116, USAO_000122, and USAO_000126; and
- a report of an interview of a JetBlue employee to whom Minor A's family reported the incident, USAO_000118.

The government also produced other reports of interviews of potential witnesses, *see* USAO_000115 (Interview of EMT) and USAO_000121 (Interview of KBJ), and certain statements made by the defendant's wife (Automatic Discovery Letter ¶ G(1)).

See response to Request Nos. 2 and 4. For the same reasons stated therein, the government declines to produce additional witness statements at this time.

Additionally, there is no basis in the Federal Rules of Criminal Procedure or the Local Rules for

2

requiring the government to reduce to writing oral statements of witnesses, except to the extent those statements contain statements of the defendant or exculpatory information, and the government declines to do so. Even Jencks Act statements – which are not required to be produced until after a witness has testified on direct examination at trial – include only " (1) a written statement made, adopted, or approved by the witness, 18 U.S.C. § 3500(e)(1); (2) a recording (or transcription thereof) that is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of the oral statement, *id.* at (e)(2); or (3) a statement (or transcription thereof) made by the witness to a grand jury, *id.* at (e)(3). *United States v. Gonzalez-Melendez*, 570 F.3d 1, 3 n.3 (1st Cir. 2009). *See also* Fed. R. Crim. P. 26.2 (incorporating the Jencks Act into the Federal Rules of Criminal Procedure).

**Request No. 6**
Any outstanding, notes, reports, supplemental reports, and any other written summaries which memorialize law enforcement interviews, including but not limited to the following: [subparagraphs (a) through (k), spanning five pages, are incorporated by reference].

**Response to Request No. 6**
See responses to Request Nos. 2, 4, and 5. For the same reasons stated therein, the government declines to produce additional reports, written summaries, recordings, or notes of law enforcement interviews, or text or email communications between potential witnesses and law enforcement, at this time, except as provided below.

With respect to Request 6(h), pertaining to the conversation in which Sgt. Lopes invited Mr. Lefman to an interview, the government additionally states: (1) the redacted information in USAO_000123 consists of a law enforcement summary of Minor A's report (which the government has already produced in numerous formats, see Response to Request No. 5) and a summary of the recorded interview of Mr. Lefman, for which the government has already produced the actual recordings (USAO_000042-43), so the government declines to produce an unredacted report at this time; (2) the government has additionally produced a report at USAO_000134 regarding the contact between Sgt. Lopes and Mr. Lefman; (3) there are no additional notes, reports, written summaries, or recorded radio discussions regarding the phone conversation with Mr. Lefman; and (4) there are no other reports, notes, or summaries relating to statements made by Mr. Lefman to Sgt. Lopes prior to his arrival for the interview.

With respect to Request 6(j)(2), the government stated in its Automatic Discovery Letter: "A body-worn camera recording of Massachusetts State Police interviews of Minor A and her family on August 30, 2024, as well as an audio recording of an FBI interview of Minor A on September 9, 2024, will be made available for inspection closer to trial; the government has voluntarily produced several reports regarding these interviews early." Because the request is premature, and the government has already produced a written statement of Minor A as well as numerous reports of interviews with her and others reflecting her statements, the government declines to produce the recordings at this time, but reiterates that it will make them available for inspection, or produce them pursuant to a protective order, closer to trial.

With respect to Request 6(k)(1), the government states that the redacted information is non-discoverable except potentially as Jencks material, and the government therefore declines to

3

produce the unredacted report at this time.

With respect to request 6(k)(2), the government states that TFO Quinonez-Hamilton collected Mr. Lefman's DNA sample pursuant to standard FBI arrest procedure.  That DNA has not been and will not be sent for testing or comparison to evidence collected in this case. Accordingly, there are no "notes and outcomes" to produce.

With respect to request 6(k)(3) for body-worn camera footage captured during Mr. Lefman's arrest, the government stated in its Automatic Discovery Letter: "Consensual audio/video recordings were made of an interview involving the defendant Jonathan Lefman on August 30, 2024, as well as of Mr. Lefman's statements during booking on February 7, 2025. These recordings are enclosed as USAO_000042-43 and USAO_000028. Additional body-worn camera footage of the period from Mr. Lefman's arrest through his transport to the courthouse on February 7, 2025 is available for inspection at the United States Attorney's Office. The government does not believe that these videos contain relevant statements of the defendant, but nonetheless offers them for inspection."  The government reiterates this offer.

**Request No. 7**
In the event law enforcement failed to memorialize any statements requested in paragraph (a-k), please reduce such statements to writing.

**Response to Request No. 7**
See responses to Request Nos. 2, 4, and 5.  For the same reasons stated therein, to the extent that there are any additional witness statements that were not reduced to writing, the government declines to reduce them to writing and produce them at this time.

**Request No. 8**
All text messages, emails and other communications exchanged among law enforcement and the complainant/witnesses. Including, but not limited to, the text message communications requested above.

**Response to Request No. 8**
See responses to Request Nos. 2, 4, and 5.  For the same reasons stated therein, the government declines to produce these materials at this time.

**Request No. 9**
Any law enforcement video and audio recordings collected during the investigation of this case. Including but not limited to those items requested above.

**Response to Request No. 9**
See responses to Request Nos. 2, 4, and 5.  For the same reasons stated therein, the government declines to produce additional recordings beyond the ones already produced, and beyond the Body Worn Camera footage of the defendant's arrest, at this time.

4

**Request No. 10**
All Body Worn Camera footage relating to the investigation of this case, including the following:

a. Boston Police Department Body-worn camera recordings, which according to this report was provided to SA Costello on 2/7/2025. See, Bate Stamp USAO 0139;

b. On 2/21/2025, the Massachusetts State Police provided SA Costello with all BWC recordings in their possession related to Mr. Lefman arrest. According to the report, two recordings were provided. Please provide these recordings. To date, we only have video from Mr. Lefman's booking. See, Bate Stamp USAO 0139; and

c. Massachusetts State Police which was provided to SA Costello on 9/30/2024 . *See*, Bates Stamp USAO_0130.

**Response to Request No. 10**
See response to Request No. 6.  For the same reasons stated therein, the government reiterates its offer to make available for inspection the Body Worn Camera footage of the defendant's arrest, and declines to produce Body Worn Camera footage of the interviews of Minor A and her family at this time.

**Request No. 11**
Criminalistics reports, photographs and notes pertaining to the collection of DNA swabs from JetBlue flight #62. See, USAO_000129. According to this report "5 locations within the seat structures of 39F were swabbed for DNA." See, USAO_0113. After collection, specimens were submitted to FBI Boston evidence for storage pending laboratory examination.

**Response to Request No. 11**
The government stated in its Automatic Discovery Letter: "DNA swabs taken of portions of the seat structure of seat 30F, as depicted in USAO_000008 and described in USAO_000113, are awaiting testing. A copy of the reports of results of that testing will be provided to you upon receipt by this office."

The government is producing herewith USAO_000141, containing an additional sketch of the areas swabbed, in addition to the sketch previously produced as USAO_000008. The government is also producing herewith USAO 000142-144, reflecting the results of DNA testing on the swabs taken from areas on seat 30F.  The government will produce additional lab discovery materials when they become available.

**Request No. 12**
Bench notes and raw data relating to the DNA Laboratory Report produced on September 20, 2024.

**Response to Request No. 12**
See response to Request No. 11.

**Request No. 13**
Recorded police communications leading up to law enforcement's arrival to the reported scene at

the Boston Logan International Airport, including but not limited to recordings from the BOLO broadcasted to law enforcement.

**Response to Request No. 13**
The government is investigating whether any such recorded police communications exist.  To the extent they do, the government will review them to determine whether they contain any discoverable information and, if so, will produce them when required by the relevant rules.

**Request No. 14**
Written summary of any interview with the complainant's father before and after interviewing his minor child. The same for recorded interviews.

**Response to Request No. 14**
See response to Request Nos. 2, 4, and 5.  For the same reasons stated therein, the government declines to produce such materials at this time.

**Request No. 15**
Information related to the complainant's immigration status, including the terms of that status at the time of the alleged incident. If any changes to that status are pending or expected, please provide those details. Such information is potentially exculpatory and relevant to impeachment and motive to fabricate.

**Response to Request No. 15**
The prosecution team is not in possession of information related to the complainant's immigration status.  Moreover, without agreeing that such information has any impeachment value, the government notes that impeachment material is not yet due.

**Request No. 16**
Promises, inducements, rewards to any witnesses by any law enforcement agency in connection with this case. Such information is exculpatory and required under Local Rule 116.2(b)(1)(C).

**Response to Request No. 16**
As the government noted in its Automatic Discovery Letter: "Except standard victim services for Minor A, no promises, rewards, or inducements have been given to any witness whom the government anticipates calling in its case-in-chief."

**Request No. 17**
All criminal histories of prosecution witnesses including adult, juvenile and out of state criminal records. This information is exculpatory and mandatory discovery under Local Rule 116.2(b)(1)(E).

**Response to Request No. 17**
As the government noted in its Automatic Discovery Letter: "The government is unaware that any of its named case-in-chief witnesses has any criminal record. However, the government has not yet determined who all of its trial witnesses will be, and will supplement this disclosure closer to trial."

6

**Request No. 18**
A written statement regarding the seating arrangement within row 30 E. Specifically, the names and addresses of passengers sitting in the complainant's row.

**Response to Request No. 18**
The partial passenger manifest produced as USAO_00033 indicates that the passengers assigned to row 30 include:
- Seat 30B: BBT
- Seat 30C: JM
- Seat 30D: JMF
- Seat 30E: KBJ
- Seat 30F: JD

However, FBI investigation revealed that an individual with initials EMT was actually seated in 30D, and Minor A was actually seated in 30F. Although the request for potential witness name and address information is premature, the government will voluntarily provide the names and addresses of the passengers seated in row 30 other than Minor A, to the extent the government is in possession of such information. For the reasons stated above, the government declines to provide Minor A's name and address at this time.

**Request No. 19**
All social media information related to the complainant within the government's possession.

**Response to Request No. 19**
The government is not in possession of social media information related to the complainant.

Very truly yours,

ELIANNA J. NUZUM
Assistant U.S. Attorney

Enclosures

7



**U.S. Department of Justice**

*Leah B. Foley*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston. Massachusetts 02210*

August 5, 2025

**By Hand**

Paul Cirel, Esq.
Shayla Mombeleur, Esq.
Todd & Weld LLP
One Federal Street
Boston, MA  02110

> Re:    United States v. Jonathan Lefman,
>         Criminal No. 25-cr-10083-JEK

Dear Counsel:

In fulfillment of the government's ongoing discovering obligations, and following up on my letter of July 17, enclosed please find:

| | |
|---|---|
| USAO 000145 | Redacted copy of the audio recording of the September 9, 2024 interview of the victim |
| USAO 000146-176 | DNA Search Warrant package |
| USAO 000177 | 302 re: Execution of DNA Search Warrant |
| USAO 000178 | Report re: Mailing Lefman DNA to FBI Laboratory |

Please let me know when you would like to come by my office to inspect the redacted version of the audio/video recording of the brief interview of the victim conducted by Sergeant Lopes on August 30, 2024 and the redacted version of the audio/video recording of relevant statements by the victim and her family members at the airport on August 30, 2024.  For your planning purposes, the combined audio/video recording of those statements and the interview is approximately 30 minutes long.  I am generally around the week of August 11 or 18.  Alternatively, I would be willing to produce a copy pursuant to a Protective Order that prohibits Mr. Lefman from possessing a copy.

Very truly yours,

ELIANNA J. NUZUM
Assistant U.S. Attorney