UNITED STATES OF AMERICA

v.

JONATHAN LEFMAN,

              Defendant.

Criminal No. 25-cr-10083-JEK

## **DEFENDANT'S MOTION TO COMPEL DISCOVERY (REFILED)**

Defendant, Jonathan Lefman, requests an order compelling the government to produce discovery requested by letter dated July, 2 2025. *See* **Exhibit 1.** In its response, attached as **Exhibit 2**, the government declined to provide much of the requested information and is still contemplating at least <u>one</u> request discussed outside of the defendant's request by letter.[1]

The requested discovery, discussed below, is made pursuant to Fed. R. Crim. P. 16, Local Rule 16.2, the Due Process Clause of the Fifth Amendment, *Brady v. Maryland,* 373 U.S. 83 (1963), and the inherent power of the Court to order broad discovery in appropriate cases. *See* Rule 16, Advisory Committee Notes (recognizing that "[t]he rule is intended to prescribe the minimum amount of discovery to which the parties are entitled...[and] is not intended to limit the judge's discretion to order broader discovery in appropriate cases").

---

[1] Aside from the defendant's request by letter, ongoing discovery conversations have been held by email and teleconference. *See* ECF 59

**Discovery Status**

In response to the defendant's July 2, 2025, discovery request, the government has produced[2] redacted law enforcement reports, a redacted written statement from the Complainant, and redacted audio and body worn camera footage. After reviewing the government's most recent production, the defendant requested the following:

(1) unredacted copies of law enforcement reports previously produced;

(2) unredacted audio recording and body worn camera footage previously produced;

(3) Promises, inducements, rewards[3] to any witnesses by any law enforcement agency in connection with this case;[4] and

(4) FBI and law enforcement reports relating to the requirements and procedures of interviewing minor, non-native English-speaking witnesses, and the general procedures and instructions on conducting victim and witness interviews.

The government has formally declined to produce requests (1) – (3) and is still contemplating its response to request (4).[5] *See* ECF 59.

---

[2] *See* the Government's response to the defendant's discovery requests attached hereto as **Exhibit 3**

[3] Benefits provided to witnesses includes Stays of deportations or other immigration status considerations, S-Visas etc.

[4] Such information is exculpatory and required under Local Rule 116.2(b)(1)(C).

[5] As discussed in the Defendant's Motion to Withdraw and Refile (ECF 59), the government is still contemplating Request 4 and will have 14 days from October 29, 2025, to formally respond. After conferring with the government, we agree including section D of the Defendant's (original) Motion to Compel Discovery (which requested law enforcement manuals/guidance), is premature. *See* ECF 58 – 59. The defendant reserves his right to amend this Refiled Motion to Compel should the government later formally decline to produce the law enforcement materials/guidance as set forth in Section D of his initial Motion to Compel. *See* ECF 58 pp. 13-14.

**Background[6]**

Mr. Jonathan Lefman is charged with one count of Abusive Sexual Contact within the Special Aircraft Jurisdiction of the United States, 49 U.S.C. § 46506(1) and 18 U.S.C. § 2244(b), which are based on his alleged acts of intentional and inappropriate touching of a minor both during the flight and at the point of deplaning.

As context, on August 30, 2024, Mr. Lefman and the Complainant were both passengers onboard a JetBlue flight flying from San Juan, Puerto Rico to Boston, Massachusetts. During the flight, Mr. Lefman was seated with his family, with whom he had recently enjoyed vacation. The Complainant, 17, was also returning from some sort of family event with two adult women who have thus far held themselves out to be some form of family members. (As discussed below, their exact relationship to the Complainant is unknown, but according to their representations in the body worn camera footage, they inconsistently, and at various point, claim to be the "cousins", "aunts" or hold some kind of other familial tie to the Complainant.) [7]

As to the reason for their travel, body worn camera evidence suggest that these two alleged family members had arranged for the Complainant "to travel to the states" for the first time. Given that statement, it is unclear whether the Complainant is a citizen or holder of some form of temporary or permanent status.

Proximate in time to deplaning, the Complainant captured a video of what appears to be Mr. Lefman's hand reaching near the lower pocket area of the back of her seat, which from Mr. Lefman's purview -- is his front pocket seat. Before taking this video, the Complainant offers

---

[6] The following summary of the allegations is derived from law enforcement reports and other discovery materials and is not an admission of their truth, reliability, or admissibility.

[7] Transcripts of the (1) Complainant's FBI audio recorded interview on 9/9/2024 and (2) Complainant's and two unidentified women's statements recorded by body worn camera footage on 8/30/3034 are both available should the Court wish to review them.

different accounts of what she felt and saw leading up to the video.  Notably, the video does not show the hand touching the Complainant in any way.

After deplaning, the Complainant discussed her recorded video with the two unidentified female family members. To be clear, during the entirety of the flight, these two women were not seated with or within an eye view of the Complainant. And when speaking to law enforcement, they offer a varying (second hand) account of Mr. Lefman's actions leading up to the recording of his hand reaching under the seat.  Since the evidence so far seem to suggest that the Complainant shared the video (and her version of events) with both women, at the same time, they are both potential witnesses.

Specifically, the overarching issue here, and the reason for the defendant's request, is to understand the full extent of inconsistent statements, confirm suspicion of motive and investigate credibility issues; all of which have been revealed by the government's first round of discovery. Initial discovery productions also revealed certain investigation defects that have bearing on the Complainant's statements and credibility as a whole.

At the outset of this case, the government filed a routine protective order on account of the Complainant's age. The defendant did not object at that juncture but now requests this Court to revisit the issue and terminate that Order. The defendant's renewed request is specifically linked to the change of circumstances in this case— including suspicions of witness motive(s), issues of credibility, and general potential defenses.

**Argument**

## A. <u>Overview</u>

This case is built on sand:

Statement evidence is the crux of the government's case. Its case is predicated on he said/ she said, and the central conflict involves a dispute concerning an alleged touch during a busy flight. Although the government leans on video evidence of Mr. Lefman's hand, which is shown maneuvering towards the bottom of the front pocket area of the seat facing him, the video itself is not dispositive. Rather, it shows that Mr. Lefman's hand makes no contact with the Complainant's buttocks or other intimate body parts, nor does it offer evidence of his intention to "gratify". *See* 18 U.S.C. 2244; also see, *United States v. Castillo*, 981 F.3d 94, 104 (1st Cir. 2020) (defining "sexual contact" as "the intentional touching, either directly or through the clothing, of the ... inner thigh ... of any person with an intent to ... arouse or gratify the sexual desire of any person").

Moreover, the video was taken after landing and at or around the time passengers were invited to "check the seatback pocket in front of you."

As the video itself has no touch, spoken words, or other acts relating to intent, the central evidence in the government's case includes statements from the Complainant and a secondary account from the two unidentified women. The government will use Complainant's testimony to allege that Mr. Lefman at some point touched the Complainant in a manner that constitutes the crime charged.

As stated above, the overarching issue here is credibility and exploring the inconsistent statements (including those made under the guidance of law enforcement), is crucial to the preparation of a defense. It is the government's denial of the above requests that necessitates the defendant's move by motion to compel discovery.

**B.  Unredacted copies of law enforcement reports, body worn camera and audio recordings are material to the government's case-in-chief, within the government's custody and control and necessary to adequately investigate the charges.**

The government has a constitutional "duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo,* 629 F.3d 264, 266 (1st Cir. 2011) (citing *Brady v. Maryland,* 373 U.S. 83 (1963)). In a case involving witness statements, the Court may compel pretrial disclosure of exculpatory Jencks materials prior to the conclusion of a witness' direct testimony, when the defendant's ability to adequately investigate the charges is substantially hindered, which includes independently gathering evidence and interviewing witnesses. *United States v. Carmona-Bernacet*, 539 F. Supp. 3d 253, 257 (D.P.R. 2021).

The requested discovery is exculpatory, as that term is defined both by the Supreme Court and the Local Rules, and thus the government is obligated to provide it to the defendant. *See  Brady v. Maryland*, 373 U.S. 83 (1963) (due process requires disclosure of evidence upon request where the evidence "is material either to guilt or to punishment"); *Giglio v. United States*, 405 U.S. 150 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the general rule"); Local Rule 116.2 (a) (defining exculpatory evidence as "information that is material and favorable to the accused," including information that tends to "cast doubt on defendant's guilt as to any essential element in any count in the indictment or information," or "cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief". ).

    a.  <u>Production of Unredacted body worn camera is necessary to investigate the charges including discovery of statement inconsistencies, inaccuracies and improbabilities.</u>

In this case, the primary evidence will be testimonial—what the Complainant alleges Mr. Lefman did before and after the video was taken, and which versions of these allegations were

relayed to various potential witness(s). All of the statements are within the custody and control of the government and may be proffered to infer Mr. Lefman's intent. As stated above, although the government produced a video that the Complainant took, after landing, of Mr. Lefman's hand reaching towards the bottom of the front pocket area of the seat in front of him, the video itself is not dispositive evidence. *See Castillo*, 981 F.3d 94, 104 (1st Cir. 2020). Indeed, it shows no contact with the complainant at all. Since the video shows no contact with the Complainant's private area or buttock, nor does it prove an attempt to arouse or to gratify, the statements from the Complainant and what she relayed to other witness will be used to fill the gaps.

The issue here is the government has refused to produce unredacted versions of the body camera video, audio recording of the Complainant's follow-up interview, and law enforcement reports. In respect to the statements in the body worn camera footage, various sections of the statements made by all the named potential witnesses are redacted. The defendant's ability to investigate the full range of potential inconsistencies and inaccuracies of witness statements is hindered and impeded.

In addition to the Local Rules described above, the  criminal discovery rules provide that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and the item is (i) material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E);  see Local Rule 116.1(c)(1)(A) (requiring production of Rule 16 material within 28 days of arraignment).  As the Court is aware, materiality is a low threshold: "[i]nformation is material even if it simply causes a

defendant to completely abandon a planned defense and take an entirely different path." See

*United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013); see also *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) ("Even if the documents caused [the defendant] to completely abandon [an] entrapment defense and take an entirely different path, the documents would still have been 'material to preparing the defense' under Rule 16(a)(1)(E)(i)"). The First Circuit has observed that:

> Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process.

*United States v. Lanoue*, 71 F.3d 966, 976 (1st Cir. 1995), *abrogated on other grounds by United States v. Watts*, 519 U.S. 148 (1997). Finally*, inculpatory* information is equally subject to disclosure because "it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths." *United States v. Marshall,* 132 F.3d 63, 67 (D.C. Cir. 1998); see also *United States v. Facteau*, No 15-cr-10076-ADB, 2015 WL 6509120, 2015 U.S. Dist. LEXIS 146210 at *2 (D. Mass. Oct. 28, 2015), objections overruled, 2016 WL 4445741 (D. Mass. Aug 22, 2016) (quoting *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005)).

As stated above, the video taken of Mr. Lefman's hand does not prove the offense on its own—there is no touch of an enumerated body part, nor does it demonstrate any intent to arouse or to gratify. *Castillo*, 981 F.3d 94, 104 (1st Cir. 2020) (defining "sexual contact" as "the intentional touching, either directly or through the clothing, of the ... inner thigh ... of any person with an intent to ... arouse or gratify the sexual desire of any person").

Rather, the government seeks to prove Mr. Lefman's intent by offering "statements". Here those statements involve versions of what the Complainant believed she felt and saw before

taking the video of Mr. Lefman's hand. However, it appears that the Complainant offered inconsistent statements to law enforcement and to the two unidentified women.

These inconsistencies were gleaned from what was unredacted in reports, video and audio evidence. However, the defendant has the right to both better understand the inconsistencies and explore other inconsistencies that may have been learned but for the redacted productions. For instance, the audio of the body camera video cuts out at various points of communication between the Complainant and law enforcement; and also, between the two unidentified women and law enforcement. Both sets of communications are necessary to determine the extent of the inconsistent statements and to gather any further impressions related to witness credibility and potential motive to fabricate or lie.

  b.  <u>Productions of the identities of the declarants are central to the defendant's ability to investigate suspicions of motive, bias and questions of credibility</u>

Just as the statements in this case are themselves material, the credibility and potential motivations of the declarants who made these statements are material to the defendant's preparation of a defense. And here, the redactions of the identities of the very declarants who made these statements further frustrates the defendant's efforts to prepare his defense and to adequately confront his accusers.

Government disclosure of exculpatory and impeachment evidence is part of the constitutional guarantee to a fair trial. *Brady*, 373 U.S. at 87; *Giglio,* 405 U.S. at 154. The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Due process requires the disclosure of exculpatory and impeachment evidence be made in sufficient time to permit the defendant to make effective use of that information at trial. *See e.g.*, *Weathersford v. Bursey*, 429

U.S. 545, 559 (1997); *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). The dictates of *Brady* and *Giglio* override the requirements of the Jencks Act. *See, e.g., United States v. Starusko*, 729 F.2d 256, 263 (3d Cir. 1984) (holding "compliance with the statutory requirements of the Jencks Act does not necessarily satisfy the due process concerns of *Brady*").

Courts appear to follow a general rule that the production of *Brady* material must occur at a time when disclosure would be of value to the accused. *See, e.g.*, *United States v. Elmore*, 423 F.2d 775, 779 (4th Cit. 1970); *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985). As noted above, many courts have required pretrial disclosure of exculpatory material to aid in the preparation of the defendant's case. *See e.g. United States v. LeVasseur*, 826 F.2d 158, 159 (1st Cir. 1987) (per curiam) (finding no abuse of discretion to order pretrial disclosure of rewards, inducements, or promises made to government witnesses); *United States v. Shvarts*, 90 F. Supp. 2d 219, 229 (E.D.N.Y. 2000) ("the constitutional obligations [of *Brady*] must prevail over the Jencks Act when the two collide"); United *States v. Snell*, 899 F. Supp 17, 21 (D. Mass 1995) (finding it "inconceivable that a statutory obligation should supersede a constitutional one")

In this case, a review of the body worn evidence, audio interview and reports reveal more than inconsistent versions of events. In fact, the enumerated list below outlines the existence of evidence that may be used to discredit witness testimony by attacking credibility:

1. Credibility – inconsistent statements. The Complainant offers various versions of what she believes she felt and saw Mr. Lefman do before recording the video of his hand. (which standing alone is insuffient.)

2. Credibility – dishonesty. During the audio recording, the Complainant represents to law enforcement that her handwritten statement was independently written without the involvement of the two unidentified women.  However, the evidence itself reveals

English is not her primary language and she struggled to speak the language during both of her interviews with law enforcement.

3. <u>Credibility through dishonesty</u>. The two unidentified women seem to misrepresent their familial status to law enforcement. When asked their relation to the Complainant their responses were "aunt" "cousin" and we are Cape Verdeans; we're all related "like cousins, aunts". It also seems as though one of the women says that she lives with the Complaintaint's father.

4. <u>Potential Bias</u>. One of the women states that she works at the airport in which this alleged incident took place, and that she has some sort of work-based relationship with one of the responding officers.

5. <u>Potential Motivation to Fabricate</u>. The body worn camera evidence also reveals details that empower the defendant's right to investigate the credibility and potential motivations of the Complainant and the two unidentified women including: their mentioned connection to law enforcement; alluding to knowing the system; reference to working in that same airport and having an ongoing work relationship with one of the responding officers; reference to living with the Complainant's father rather than owning or renting their own property; the appearance of expensive designer bags (to which it seems all three witnesses possess); their general inconsistent statements; and the two unidentified women's overall exertion of themselves in the case.

Finally, the Complainant's immigration status is also of concern, as any inducements and promises could have bearing on her motivation to fabricate. Particularly, if benefits such as Stays of deportations or other immigration status considerations, S-Visas, promises rewards or inducements are offered. Counsel for the defendant have on various occasions inquired about this

point to the government but have yet to receive a clear response. This point becomes even more relevant when balanced against the statements by the two unidentified women who state this trip was the Complainant's "first to the states" and that the Complainant was from Cape Verde and alluding to this being the first year she lived in the states.

Taken together, these factors offer justification for the Court to grant the defendant's request for a fair and timely opportunity to adequately investigate the identities and backgrounds of the declarant's whose statements are the crux of the government's case-and-chief.

For all the reasons discussed above, these statements and recordings are material to the preparation of a defense and will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, and/or assisting in impeachment or rebuttal. Given the nature of the statements and the unique set of facts in this case, such evidence falls outside of the usual 21-day before trial production because building a defense and preparing a federal trial in a 3-week period would be impractical, prejudicial and ineffective. Likewise, waiting to advise the Defendant on the evidence and his potential exposure and options would be equally problematic.

**C. Mr. Lefman's right to Due Process and a fair trial outweighs the government's right to redact information that is central to his preparation of a defense.**

This Court has "wide latitude in the management of discovery," including the issuance, modification and termination of protective orders. *United States v. Diaz-Colon*, 668 F. Supp. 3d 111, 114–15 (D.P.R. 2023), quoting *Danny B. v. Raimondo*, 784 F.3d 825, 834 (1st Cir. 2015). Federal Rule of Criminal Procedure 16(d)(1) ("Rule 16(d)(1)") provides that "[at] any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. Crim. P. 16(d)(1). *Id.* Here, at the outset of this case, the government

filed a routine protective order due to the Complainant's age. That same protective order was extended to the other named parties within the reports, including the two alleged family members who are the recipients of inconsistent accounts, by the Complainant.

The defendant requests a fair opportunity to investigate the information requested within this motion as it is necessary for his preparation for trial. This Court is empowered to terminate or modify a protective order upon showing of good cause. See, *United States v. Bulger*, 283 F.R.D. 46, 54–55 (D. Mass. 2012). (Modifying or lifting an existing protective order implies a changed circumstance or a new situation warranting such relief.) Much has changed since this Court endorsed the Government's Protective Order (including the Complainant's status as a minor), and the defendant now seeks to continue to learn and investigate some of the new details produced in discovery which are material to his case.

### **RELIEF SOUGHT**

For the reasons set forth above, defendant requests that the Court Order the Government to produce the following:

(1) unredacted copies of law enforcement reports previously produced;

(2) unredacted copies of audio recording and body worn camera footage previously produced; and

(3) copies of any promises, inducements, rewards to any witnesses by any law enforcement agency in connection with this case.

Respectfully submitted,

JONATHAN LEFMAN

By his attorney,


*/s/* Shayla Mombeleur

Paul Cirel (BBO# 084320)
Shayla Mombeleur (BBO# 698707)
Todd & Weld LLP
One Federal Street
Boston, MA  02110
pcirel@toddweld.com
smombeleur@toddweld.com
617.720.2626

Dated: November 5, 2025


## CERTIFICATE OF SERVICE

I, Shayla Mombeleur, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 5, 2025.


*/s/ Shayla Mombeleur*

Shayla Mombeleur


Date: November 5, 2025