# **EXHIBIT 1**

**Todd&Weld** LLP

Shayla Mombeleur
E-mail: smombeleur@toddweld.com

July 2, 2025

**VIA EMAIL**

Assistant U.S. Attorney Elianna J. Nuzum
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210

RE:    **United States v. Johnathan Lefman**
       **No. 25-CR-10083-JEK**

Dear Ms. Nuzum:

Thank you for meeting with us to discuss the requests set forth in our initial discovery letter. As discussed at our meeting, all of the items requested below are necessary for the defense to adequately prepare for trial and advise our client of the evidence against him. To meet those aims, we request, or re-request, the production of the following:

1.  Unredacted copies of the reports produced
2.  Any and all copies of written statements from the complainant and other witnesses referenced within the investigative reports, including all variations of those statements. For statements made orally, please produce in writing
3.  All communication between the complainant and Sargeant Lopes on 8/30/24. According to the FBI 9/13/24 report, this particular communication exchange included some form of telecommunication (See, USAO_000105); and
4.  All audio recording and video taken during the 8/30/24 interview. Including, statements made by the complainant, her father (who according to the report offered consent for the interview to proceed with his minor daughter) and the "aunt/cousin" who is referenced in this report. *Id.* The same for any other existing audio and video recordings.

The discovery requests discussed above are made pursuant to Fed. R. Crim. P. 16, Local Rule 16.2, the due process clause of the Fifth Amendment, *Brady v. Maryland*, 373 U.S. 83 (1963), and the inherent power of the Court to order broad discovery in appropriate cases. See Rule 16, Advisory Committee Notes (recognizing that "[t]he rule is intended to prescribe the minimum amount of discovery to which the parties are entitled...[and] is not intended to limit the judge's discretion to order broader discovery in appropriate cases").

As you know, the government has a constitutional "duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v.*

*Prochilo,* 629 F.3d 264, 266 (1st Cir. 2011) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). In a case involving witness statements, the Court may compel pretrial disclosure of exculpatory Jencks materials prior to the conclusion of a witness' direct testimony, when the Defendant's ability to adequately investigate the charges is substantially hindered, which includes independently gathering evidence and interviewing witnesses. *United States v. Carmona-Bernacet*, 539 F. Supp. 3d 253, 257 (D.P.R. 2021). The Local Rules further provide that

> [e]xculpatory information includes, but may not be limited to, all information that is material and favorable to the accused because it tends to:
> (1) Cast doubt on defendant's guilt as to any essential element in any count of the indictment or information;
> (2) Cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief, that might be subject to a motion to suppress or exclude . . . .;
> (3) Cast doubt on the credibility or accuracy of any evidence that the government anticipates offering in its case-in-chief; or
> (4) Diminish the degree of the defendant's culpability or the defendant's Offense Level under the United States Sentencing Guidelines.

Local Rule 116.2(a) (emphasis added). More specifically, within 28 days of arraignment the government is required to produce:

> (A) information that would tend directly to negate the defendant's guilt concerning any count in the indictment or information;
> (B) information that would cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief and that could be subject to a motion to suppress or exclude . . .;
> (C) a statement whether any promise, reward, or inducement has been given to any witness whom the government anticipates calling in its case-in-chief, identifying by name each such witness and each promise, reward, or inducement, and a copy of any promise, reward, or inducement reduced to writing;
> (D) a copy of any criminal record of any witness whom the government anticipates calling in its case-in-chief, identifying by name each such witness;
> (E) a written description of any criminal cases pending against any witness whom the government anticipates calling in its case-in-chief, identifying by name each such witness.

Local Rule 116.2(b)(1).

As discussed in greater detail below, the discovery we seek not only pertains to information the government is sure to include in its case-in-chief—statement evidence, which is the only evidence, will be used to prove Mr. Lefman's intent. Therefore, the discovery of inconsistencies, inaccuracies, and improbabilities are significant to learn and address both prior to trial and before

**Todd&Weld** LLP

entering the trial session altogether. Here, the evidence we seek cannot be discovered by other means as the evidence is solely within the custody and control of the government.

Additionally, the criminal discovery rules provide that [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and the item is (i) material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E) (emphasis added); see Local Rule 116.1(c)(1)(A) (requiring production of Rule 16 material within 28 days of arraignment).  As you are aware, Materiality is a low threshold: "[i]nformation is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path." See *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013); see also *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) ("Even if the documents caused [the defendant] to completely abandon [an] entrapment defense and take an entirely different path, the documents would still have been 'material to preparing the defense' under Rule 16(a)(1)(E)(i)"). The First Circuit has observed that

> Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process.

*United States v. Lanoue*, 71 F.3d 966, 976 (1st Cir. 1995), *abrogated on other grounds by United States v. Watts*, 519 U.S. 148 (1997). Finally*, inculpatory* information is equally subject to disclosure because "it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths." *United States v. Marshall,* 132 F.3d 63, 67 (D.C. Cir. 1998); see also *United States v. Facteau*, No 15-cr-10076-ADB, 2015 WL 6509120, 2015 U.S. Dist. LEXIS 146210 at *2 (D. Mass. Oct. 28, 2015), objections overruled, 2016 WL 4445741 (D. Mass. Aug 22, 2016) (quoting *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005)).

Here, the primary evidence includes what the Complainant states Mr. Lefman did before and after the video was taken. All of which is in the custody and care of the government and will be proffered to infer his intent. Currently, you have produced written versions of the Complainant's statements, which are memorialized through various law enforcement reports, and at least one written report by the Complainant which according to the reports, was at one point amended due to the Complainant's struggle to speak and write in the English language. The language barrier here only heightens the need for the opportunity to review the best and most accurate representation of the

**Todd&Weld**LLP

evidence in this case--the recording themselves. Even more so, where the video does not on its own prove a crime, and the authors of the reports of the Complainant's statements offer an inconsistent primary language with ancestral background. For instance, some reports state the Complainant is of Cape Verdean decent, which is an island off the coast of Africa, yet asset her primary language is referenced as Spanish. Such a mix up could cause an inadvertent disruption in the evidence, which only presents more obstacles and challenges later.  Even more so if the Complainant's statements were misinterpreted by one of the many officers who interviewed her and memorialized her statements. Even if Spanish is a language, she (and the other family witnesses') speaks, the accuracy of translation still holds significance if (like English) this is not her primary language.

Besides the question of proficiency in any language, an immediate disclosure of statement evidence is crucial at this stage of Mr. Lefman's prosecution. Precisely to ensure accuracy and a complete understanding of the evidence.  The video recordings capture the Complainant's firsthand statements to law enforcement and must be viewed against any other versions which may have been written or recorded. Without such evidence, Mr. Lefman is left in the dark about the evidence. He cannot investigate the material evidence against him, prepare a defense or make an informed decision about whether to resolve or litigate the charges. He of course needs to understand what, if any, evidence is stacked against him.

To that same end, the captured statements offered by the fresh complainant are also paramount to the understanding of the evidence and preparing a defense. There is no doubt that first complaint evidence will be used to support which ever version of the Complainant's statements is adopted as Case-in Chief evidence against Mr. Lefman.

Additionally, Mr. Lefman is entitled to obtain these statements for impeachment. *United States v. Carmona-Bernacet*, 539 F. Supp. 3d 253, 258 (D.P.R. 2021), citing *Palermo v. United States*, 360 U.S. 343, 345, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), and (again) the production of these statements are thereto required where the evidence is material to preparing the case, advising on the evidence and the potential outcomes of the case.

For all the reasons discussed above, these statements and recordings are material to the preparation of a defense and will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, and/or assisting impeachment or rebuttal. Given the nature of the statements and the unique set of facts in this case, such evidence falls outside of the usual 21-day- before- trial production because building a defense and preparing a federal trial in a 3-week period would be impractical and ineffective. Likewise, waiting to advise the Defendant on the evidence and his potential exposure and options would be equally problematic.



Sincerely,

Paul Cirel
Shayla Mombeleur

PRC/sm