UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JONATHAN LEFMAN | Criminal No. 25-cr-10083-JEK |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

The defendant's motion to compel discovery, Dkt. No. 62, should be denied. The defense motion illustrates the maxim, "No good deed goes unpunished." In this case, the government provided early Jencks materials, including almost all statements of potential witnesses, and all relevant statements of Minor A, subject to mostly minor redactions, to aid the defendant in assessing the case against him. In response, the defendant now seeks unredacted reports and recordings of witness interviews that by statute cannot be compelled prior to trial; disclosure of witness identities that are customarily not due until two weeks prior to trial and for which there is no demonstrated earlier need here; disclosure of promises, rewards, and inducements that he has been told twice already do not exist; and modification of a protective order that has not deprived the defense team of any discovery. Because the defendant's motion is unsupported by the law or facts of this case, the Court should deny the defendant's motion in its entirety.

## BACKGROUND

The defendant Jonathan Alan Lefman is charged with Abusive Sexual Contact within the Special Aircraft Jurisdiction of the United States. 49 U.S.C. § 46506(1) and 18 U.S.C. § 2244(b); 18 U.S.C. § 3238. Dkt. No. 12. The government alleges that on August 30, 2024, while aboard JetBlue flight 62 and flying from San Juan, Puerto Rico to Boston, the defendant on multiple occasions intentionally worked his hand in between and through the area between the back and

bottom of the seat directly in front of him, where a seventeen-year-old female passenger ("Minor A") was seated and touched her buttocks without her permission. Dkt. No. 1-2 ¶ 7. Upon deplaning, Witness 1, an adult family female member of Minor A, reported the incident to Witness 2, a JetBlue supervisor working at the gate. *Id.* ¶ 13. Minor A was interviewed by the Massachusetts State Police on the same day, *Id.* ¶ 16, and FBI investigators on September 9, 2024. *Id.* ¶ 19. Witness 1 accompanied Minor A to both interviews. The additional family member was present at the August 30 interview. Witness 2 was interviewed by FBI investigators on October 3, 2024. Dkt. No. 1-2 ¶ 23.

The evidence in the case is expected to include the testimony of Minor A, a video she took of the defendant's fingers protruding between the back and bottom of Minor A's seat into the area of Minor A's seat bottom and moving around, and a video she took of Lefman – who she identified as the individual who poked her buttocks – deplaning. *Id.* ¶ 13. Other than Minor A, the government has not determined which potential witnesses it will call at trial. *See* Government's Automatic Discovery Letter, attached hereto as Ex. 1, at 5; Government's May 28 Discovery Letter, attached hereto as Ex. 2, at 3.

The court issued a protective order allowing the government to designate as sensitive, and thereby restrict the defendant from personally possessing, discovery materials that depicted Minor A or contained other highly personal or sensitive information about her. Dkt. No. 46 at 1. The protective order prevented the defendant from personally possessing a copy of sensitive material, but it did not prevent him from reviewing them in the presence of counsel. *Id.* at 2. As discussed below, the government has only designated one item Sensitive under the Protective Order: a video that depicts Minor A's body.

The government provided pre-charge discovery on January 23, 2025 and automatic discovery on April 4, 2025. This discovery included, among other materials, a recording of the interview of the defendant, the videos that Minor A took, information about the aircraft, airport surveillance video depicting the defendant and an interaction with Minor A's family after deplaning, photos from FBI's examination of the relevant seats, a written statement of Minor A, a report regarding a Massachusetts State Police interview of Minor A, an FBI report regarding an FBI interview of Minor A, reports regarding interviews of people seated near Minor A on the aircraft, redacted[1] reports of FBI interviews of two of Minor A's aunts and her cousin, and a report of an interview of the JetBlue representative that Minor A and her family spoke to, among other materials. *See* Ex. 1 at 2-3. The government disclosed the fact that recordings of the victim's interviews had also been made, and would be made available for inspection closer to trial. *Id.* at 3.

On May 12, the defendant requested additional discovery, and the government responded on May 28. *See* Ex. 2. The government made a small supplemental production the same day, and agreed to the early production of the identities and contact information in its possession for individuals seated in Minor A's row on the aircraft. *Id.* at 8. The parties subsequently conferred further via telephone about the requests that the government had declined.

On July 2, 2025, the defendant submitted a discovery request letter with a more narrow set of requests, now requesting that the government produce unredacted copies of reports previously produced, "[a]ny and all copies of written statements from the complainant and other witnesses

---

[1] The report of Minor A's aunt IF's interview was redacted to remove the names, PII, and contact information of potential witnesses as well as portions of the interview did not reflect statements of Minor A, the only witness to the abusive sexual contact itself; none of Minor A's statements to IF were redacted. If IF were to be called as a witness, the government would provide the remainder of the substance of this report. Only names and contact information were redacted from the report of the interview of Minor A's aunt VM and cousin SV.

referenced within the investigative reports, including all variations of those statements," "[a]ll communication between the complainant and Sargeant [sic] Lopes on 8/30/24," and "all audio recording and video taken during the 8/30/24 interview. Including, statements made by the complainant, her father . . . and the 'aunt/cousin' who is referenced in this report." Dkt. No. 62-1 at 2. In response, on July 17, the government offered to work with the defendant to come up with an accelerated schedule for pretrial disclosures, and to produce or make available for inspection redacted copies of the recorded interviews requested. *See* Government's July 17 Discovery Letter, attached as Ex. 3. Thereafter, on August 5, the government produced a redacted copy[2] of the audio recording of the September 9, 2024 FBI interview of Minor A. Dkt. No. 62-2 at 2. *See* Government's August 5 Discovery Letter, attached as Ex. 4. On August 19, subject to the protective order, the government also provided a redacted copy[3] of the audio/video recording of Sergeant Lopes's interview of Minor A and relevant statements by Minor A and her family members at the airport on August 30, 2024. *See* Government's August 19 Discovery Letter, attached as Ex. 5.

The defendant now requests that the Court compel the government to produce (1) unredacted copies of law enforcement reports, audio recording, and body worn camera footage previously produced, including information about the identities of the potential witnesses, and (2) copies of any promises, rewards, and inducements to any witnesses by any law enforcement agency in connection with this case, including information regarding the immigration status of

---

[2] The recording was redacted to remove references to Minor A's name and her family member's names and contact information.

[3] Because it was taken from a body-worn camera, the recording captured more than just statements of potential witnesses, including internal MSP communications. The recording was redacted to remove internal MSP communications, references to Minor A and her family member's names and contact information, as well as irrelevant conversation (such as how they had spent their time on vacation).

Minor A and her family members. The defendant also requests that the court terminate or modify the protective order. Dkt. 62 at 12.

First, the request to compel unredacted copies of law enforcement reports and statements should be denied because (1) to the extent the defendant is seeking any statements that have been redacted, the government cannot be ordered to provide early Jencks, and (2) to the extent he is seeking the names of the government's potential witnesses, the defendant has provided no valid basis for the early disclosure of the identities of potential witnesses, and early disclosure of some of the potential witnesses' identities would result in an unwarranted invasion of the privacy of Minor A, who could be identified through the disclosure of her family's identities.

Second, the request to compel disclosure of promises, rewards, and inducements should be denied as moot, because the government has already disclosed at least two times that no promises, rewards, or inducements have been provided to any witnesses in connection with this case, other than standard victim services to Minor A. *See* Ex. 1 at 5; Dkt. No. 62-3 at 7.

Finally, the Court should maintain the protective order as is, because it reasonably balances the defendant's need for access to information and the victim's right to privacy; the defendant both misapprehends its meaning and has failed to show good cause for its modification and termination.

## **ARGUMENT**

I. **The Unredacted Copies of Law Enforcement Reports, Audio Recording, and Body Camera Footage Previously Produced Are Not Relevant or Material, or Exculpatory**

As an initial matter, as set forth above, virtually all relevant statements of potential government witnesses, other than IF, were voluntarily produced well in advance of the deadline for Jencks material, and the only material redacted from the vast majority of these statements was personally identifying information, contact information, or irrelevant statements. All of Minor A's

statements have been produced, with only redactions for her name, contact information, and names of relatives that could be used to identify her.

The defendant's demand for unredacted reports and recordings from the interviews is little more than an attempt to force the early disclosure of witness statements and identity information to which the defendant is not entitled at this stage of the proceedings. The defendant cannot transform these materials from post-direct-examination material or 21-day material into immediately discoverable material simply by characterizing them as "exculpatory," particularly where the government has determined that they are not and the defendant offers nothing but speculation to the contrary. Dkt. No. 62 at 6.

### a. The defendant is not entitled to, and the Court cannot compel, the production of early Jencks.

Although it is common local practice to produce witness statements 21 days prior to trial, it is inarguable that statements of government witnesses that are not exculpatory cannot be compelled until after the completion of a witness's direct examination. The defendant cites Fed. R. Crim. P. 16(a)(1)(E) and Local Rule 116.1(c)(1)(A) in arguing that unredacted reports and recordings should be produced as automatic discovery as they are material to his defense. Dkt. No. 62 at 7-8. Rule 16, however, specifically exempts from discovery interview reports and notes of government agents except as provided under the Jencks Act, which itself mandates only that the government turn over "written statements" or recordings of statements of trial witnesses, or substantially verbatim recitals of such statements, and then only after a witness has testified on direct examination at trial. 18 U.S.C. § 3500(a) ("no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shell be the subject of . . . discovery, or inspection until said witness has

testified on direct examination in the trial of the case"); *see also United States v. Tejeda*, 974 F.2d 210, 217 (1st Cir. 1992).

The Jencks Act is not a "pretrial discovery tool." *United States v. Carmona-Bernacet*, 539 F.Supp.3d 253, 257 (D.P.R. 2021) (citation modified). Given that the material is not exculpatory under *Brady*, the government has no obligation to disclose, and the court cannot compel such disclosure. *United States v. Norris*, No. 2:22-cr-00132-NT, 2023 U.S. Dist. LEXIS 218581, at \*1 (D. Me. Dec. 8, 2023) ("the First Circuit has made it plain that a district court does not have the authority to mandate the early disclosure of Jencks Act material") (internal quotations and citations omitted) (collecting cases). The defendant's argument that such statements can be compelled early where his defense is "substantially hindered" by non-production, Dkt. No. 62 at 6, is directly contravened by the statutory language and the very case law the defendant cites. Indeed, in *Carmona-Bernacet*, cited by the defendant, the court denied the defendant's motion to compel early Jencks material, stating, "It is beyond peradventure that this statute 'authorizes the government to withhold the recorded statements of a prospective government witness until the witness completes his direct testimony.'" 539 F.Supp.3d at 257 (internal citation omitted).

Although the defendant claims (without support) that the redacted portions of the early-produced statements are exculpatory, Dkt. No. 62 at 6, Local Rule 116.2 distinguishes between different categories of "exculpatory information," and sets forth a timetable for their disclosure. Certain categories of exculpatory information must be produced within 28 days of arraignment "or by any alternative date established by the Court." L.R. 116.2(b)(1). Those categories include, notably, "[i]nformation that would tend *directly to negate the defendant's guilt* concerning any count in the indictment or information," L.R. 116.2(b)(1)(A) (emphasis added), as well as information that would "cast doubt on the admissibility of evidence that the government anticipates

7

using in its case-in-chief and that could be subject to a motion to suppress or exclude." L.R. 116.2(b)(1)(B). The government averred in its automatic discovery letter that it had provided any such information.  Ex. 1 at 4.

Under the same rule, other categories of "exculpatory information" must be disclosed not later than 21 days before trial. *See* L.R. 116.2(b)(2). Such "21-day material" includes, as relevant here, "[a]ny information that tends to cast doubt on the *credibility or accuracy of any witness or evidence* that the government anticipates calling or offering in its case-in-chief," L.R. 116.2(b)(2)(A) (emphasis added), as well as inconsistent statements of anticipated trial witnesses. *See* L.R. 116.2(b)(2). In this District, the government's frequent practice is to disclose Jencks Act material together with 21-day material.  Accordingly, impeachment information or arguably inconsistent statements are not yet due – although, again, the government has produced these as to Minor A.

*United States v. Brady* and its progeny do not create a general right to criminal discovery. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."). Indeed, the First Circuit has consistently held that the "[t]he government is primarily responsible for deciding what evidence it must disclose to the defendant under *Brady*." *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011).  *Brady* does not require disclosure of all information a defendant might want; the defendant must demonstrate that the allegedly exculpatory information is material, and that it would "enable[] the defendant significantly to alter the quantum of proof in his favor." *United States v. Goris*, 876 F.3d 40, 45 (1st Cir. 2017). Where the government maintains, as it does here, that it has disclosed all *Brady* materials, the defendant must "articulate with some specificity what evidence

8

he hopes to find in the requested materials, why he thinks the materials contain this evidence, and finally, why this evidence would be both favorable to him and material." *Id.* at 269.

Far from meeting this high bar, the defendant's claims are mere speculation. *See* Dkt. No. 62 at 7 ("[t]he defendant's ability to investigate the full range of potential inconsistencies and inaccuracies… is hindered and impeded"); Dkt. No. 62 at 9 ("the defendant has the right to . . . explore other inconsistencies that may have been learned but for the redacted productions"). As in *Prochilo*, the defendant has not made a specific showing of how the unredacted items will reveal that the victim's testimony is "flawed," simply speculating that the redacted portions *might* contain inconsistencies. *See* Dkt. No. 62 at 7, 9, 10–11. Given that the government has maintained it has turned over all of Minor A's relevant statements (even though they are not yet due), the defendant cannot meet his burden.

### b. The government is not obligated to produce the identities of potential witnesses at this time

The defendant's request that the court compel production of unredacted reports and recordings so as to compel early disclosure of the identities of the government's potential witnesses likewise fails. Again, he cites the need for the disclosure of exculpatory and impeachment information, but the identity of potential witnesses falls into neither bucket.

Moreover, the fact that he would like to attempt to interview witnesses earlier than the standard two weeks prior to trial does not set this case apart in any meaningful way from any other federal case; in fact, this case has much simpler facts and fewer likely witnesses than the average federal case, such that there is objectively less need for additional time. And the government has already provided the bulk of the statements of potential witnesses, even though they are not yet due, further streamlining the work that is left for the defendant to do in preparation for trial. The defendant offers various topics that he would like to further investigate in order to attack the

credibility of the government's potential witnesses, Dkt. No. 62 at 10-11, none of which appear to be particularly complicated justifying early production.

The defendant cites *Brady* in support of his argument that he is entitled to early production of the identity of potential witnesses and impeachment evidence about those witnesses. But that is putting the cart before the horse. Even the most stringent reading of the *Brady* requirement does not require the government to disclose impeachment information for someone the government is uncertain will serve a witness. As noted above, the only witness who the government is confident must testify at trial is Minor A.

The defendant's suggestion that the need to investigate the immigration status of the government's potential witnesses provides a basis for early disclosure of their identities, Dkt. 62 at 11-12, fails. As an initial matter, the government has already represented to the defendant that the prosecution team does not possess information regarding the immigration status of the defendant and the declarants. Dkt. No. 62-3 at 7. To the extent the defendant seeks to investigate their immigration status himself, the immigration status of any witness is not relevant in this case, especially since the government has already disclosed that "[e]xcept standard victim services for Minor A, no promises, rewards, or inducements have been given to any witness whom the government anticipates calling in its case-in-chief"; *i.e.,* whatever Minor A's or her family's immigration status may be, the government has not promised to do anything with respect to such status, so the immigration status is of no impeachment value. *Id.*; *see also* Dkt. No. 62 at 11-12 (alleging that immigration status is material *because* "any inducements and promises could have bearing on her motivation to fabricate").

II.     **The Government Has Already Disclosed Twice That No Witnesses Received Any Promises, Rewards, Or Inducements**

Briefly, as to defendant's third request for relief, the defendant incorrectly asserts that the Government has "formally declined" or not provided a "clear response" regarding "promises, rewards, or inducements" that witnesses have received, such that it should be compelled to make this disclosure. Dkt. No. 62 at 2, 11. In fact, the government has repeatedly provided a categorically clear response to the defendant's question: "Except standard victim services for Minor A, no promises, rewards, or inducements have been given to any witness whom the government anticipates calling in its case-in-chief." The government gave this response to the defendant in its Automatic Discovery Letter of April 4, 2025 (Ex. 1 at 5), and again in its letter on May 28, 2025 (Ex. 2 at 6). There is nothing to compel disclosure of.

**III.     There Is No Basis To Terminate or Modify the Protective Order.**

The defendant's request to terminate or modify the protective order should be denied, as such termination or modification would not make additional discovery available to him. The defendant misunderstands the function of the protective order. The defendant alleges that the protective order should be terminated because it has impeded the defendant's ability to "learn and investigate some of the new details . . . which are material to his case." Dkt. No. 62 at 13. Yet the designation of certain materials as "Sensitive" under the protective order does not prevent the defendant or his attorneys from reviewing material. Dkt. No. 46 at 2. It merely prevents the defendant from *personally possessing* a copy of sensitive materials. Modifying or terminating the protective order would not result in any additional materials being produced to the defense. In any event, the order should be maintained because the defendant has failed to "point[] to some relevant change in the circumstances under which the protective order was entered." *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 791 (1st Cir. 1988). The only changed circumstance that the defendant points to is that the victim is no longer a minor, which is an insufficient change given that she

11

remains very young, and alleged to be the victim of abusive sexual contact at the hands of the defendant; under the circumstances, it is entirely reasonable that he is prohibited from personally possessing materials depicting her body. The only item that was produced subject to the protective order was the body-worn camera recording that includes a visual depiction of Minor A. *See* Ex. 5. Under the circumstances, it is entirely appropriate that the defendant be limited to viewing this material in the presence of counsel, and this limitation does not in any way impede defense counsel's ability to investigate this matter and prepare for trial.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny the defendant's motion to compel discovery.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
elianna.nuzum@usdoj.gov
617.748.3100

Dated: November 28, 2025

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that this document filed through the Dkt. system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum

Dated: November 28, 2025